OPINION
Defendant-appellant, Ernest Carter, appeals from a jury verdict entered in the East Liverpool Municipal Court finding him guilty of one count of domestic violence in violation of R.C. 2919.25(A).
On February 10, 2000, appellant and his girlfriend, Diane Bailey (Bailey), went to the Green Mill, a local bar in East Liverpool, Ohio. While at the bar, another patron, Jimmy Givens (Givens), grabbed Bailey inappropriately. Appellant testified that he attempted to hit Givens. Appellant stated that he missed and hit Bailey by accident, knocking her off her bar stool.
Appellant and Bailey returned home and began to argue. On the call of an anonymous neighbor, patrolmen John Lane and Pat Wright arrived at appellant's and Bailey's apartment. Appellant let them in and they spoke with Bailey. She asked the officers to remove appellant for the night. She refused to press charges against appellant.
Appellant was charged with domestic violence. He was tried on March 13, 2000 and the jury found him guilty. The trial court sentenced appellant to one hundred and eighty days in jail. This timely appeal followed.
Appellant raises three assignments of error, the first of which states:
 "THE LOWER COURT ERRED IN ALLOWING THE PRIOR OFFENSES OF THE DEFENDANT INTO EVIDENCE, IN VIOLATION OF THE OHIO RULES OF EVIDENCE, RULE 403 AND 404, AND DENIED THE DEFENDANT HIS RIGHT TO A FAIR TRIAL AS GUARANTEED BY THE OHIO AND UNITED STATES CONSTITUTIONS."
Appellant argues that the trial court should not have admitted the evidence of his prior convictions, three for domestic violence and one for assault. He argues that under Evid.R. 403(A), the evidence should have been excluded because its probative value was substantially outweighed by the danger of unfair prejudice to him. He further argues that under Evid.R. 404, the evidence should have been excluded because it was evidence of his prior crimes which was used as character evidence. Appellant further claims that appellee failed to prove that the evidence of appellant's prior crimes did not pertain to his character or conforming conduct.
Appellant also argues that the jurors were confused by what purpose his prior convictions served. He states that the jurors' confusion was evidenced by their questions to the court, "[C]ould we have some extra clarity to the question of the use of previous court records and proceedings? Why was it presented without us considering it as a repeated action?"
The admission and exclusion of evidence are within the broad discretion of the trial court. State v. Mays (1996), 108 Ohio App.3d 598, 617. Abuse of discretion is more than a mere error of judgment; it is conduct that is arbitrary, capricious, unreasonable, or unconscionable. State v.Moreland (1990), 50 Ohio St.3d 58, 61.
The court in State v. Grubb (1996), 111 Ohio App.3d 277, faced a very similar situation as the one in the case sub judice. In that case, the defendant asserted accident as a defense to domestic violence against his wife. The court allowed the state to introduce evidence of the defendant's prior assaults against his wife to prove his intent and lack of accident. The Court of Appeals affirmed the trial court's ruling on the issue.
Appellant's entire defense focused on the notion that when he struck Bailey it was an accident. He contended throughout the trial that he had intended to strike Givens but Bailey got in the way.
Before introducing any evidence of appellant's prior convictions, appellee made clear to the court that it would only use those convictions to prove the absence of accident or mistake as is permitted under Evid.R. 404(B). Appellee pointed out that appellant's four prior convictions demonstrated the absence of mistake because they all involved the same victim as in the present case.
Immediately after appellee presented the testimony regarding appellant's prior convictions, the court gave the jury a limited instruction regarding that evidence. While charging the jury, the court specifically instructed the jury again that it could not consider that evidence to prove appellant's character or to prove that appellant acted in conformity with that character. When the jury asked the court during deliberations what they could use the evidence for, the court for a third time instructed them that they could not consider it to show that appellant acted in conformity with his prior bad acts. The court explained each time that it only permitted appellant's convictions as evidence because of the testimony indicating that when he struck Bailey it was an accident. The court additionally instructed the jury each time that they could only consider appellant's prior crimes as evidence of his lack of mistake or accident or to show his motive, intent, purpose or plan.
Based on the foregoing, it was within the trial court's discretion to admit the evidence of appellant's prior convictions to show the absence of an accident. Accordingly, appellant's first assignment of error lacks merit.
Appellant's second assignment of error states:
 "THE CONVICTION OF ERNEST CARTER OF DOMESTIC VIOLENCE IN THE CASE SUB JUDICE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellant argues that appellee presented no evidence that he intentionally hit Bailey. Furthermore, he argues, that he and Bailey both testified that when he hit her it was an accident. Appellant states that the police officers did not witness any violence between himself and Bailey. Appellant also relies on the testimony by the officers that Bailey would not write out a statement.
In determining whether a verdict is against the manifest weight of the evidence, a court of appeals must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.)Id. In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial. Id. at 390.
Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
R.C. 2919.25(A) provides, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Whoever violates this section is guilty of domestic violence. R.C. 2919.25(D).
Appellee first called Bailey to testify. Bailey testified that on the night in question, both she and appellant had too much to drink. She testified that Givens was sitting next to her and he got "fresh" with her. She next stated that appellant attempted to hit Givens but accidentally struck her and knocked her onto the floor. Bailey testified that after she and appellant returned home, she was hollering at him when the police showed up. She stated that she told the police that she wanted appellant to leave for the night. She testified that they both needed time to be apart and cool down. She testified that she was not afraid of appellant.
Bailey stated that she did not remember what she told the police that night. Appellee introduced a statement which Officer Pat Wright wrote the night of the incident. The statement provided:
 "Victim stated as we walked up the steps that `He hit me.' She then went on to tell myself and PTL. Lane that Ernie [appellant] hit her in the face knocking her off the bar stool (Green Mill) and when they got home he punched her in the head knocking her onto the bed.
 "Victim refused to sign complaint and give written statement.
 "Victim had redness and some blood coming from below her right eye." (State's Exhibit 1).
As to the statement, Bailey testified that she did not remember telling the police those things, but that if they wrote it down, apparently she said it. She also testified that there were times that night where she blacked out. Bailey testified that she went to the hospital a few days later because her neck hurt and that she told the physician that her boyfriend knocked her off a bar stool. On cross-examination, Bailey testified that appellant did not hit her that night at their apartment.
If the witness' written report was inadmissible, no prejudice can be found to have affected appellant's right to a fair trial. Officer Wright was in court to testify as to what happened and was subject to cross-examination. What was told to him by the victim can also be considered an excited utterance as characterized by the trial judge.
Appellee's next witness was Officer John Lane (Lane). Lane, along with Officer Pat Wright (Wright) responded to the call of domestic violence at appellant's and Bailey's residence. Lane testified that as soon as Bailey saw them coming up the stairs to the apartment, she told them that "He hit her." He testified that Bailey appeared to be upset and that she stated repeatedly, "He hit me." He testified that she had a bright red mark below her right eye. Lane testified that Bailey never indicated to him that this incident was an accident. Lane also testified that appellant never denied striking Bailey nor did he say that it was an accident.
Next, appellee called Officer Wright. Wright corroborated Lane's testimony. He also testified that Bailey refused to make a written statement, so he wrote down what she told him.
Finally, appellee called Shirley Flatey, the deputy clerk for the East Liverpool Municipal Court. She testified regarding State's Exhibits three, four, five, and six, which were the judgment entries for appellant's prior convictions. Three of the convictions were for domestic violence and one was for assault. Bailey was the victim in each case.
Appellant took the stand in his own defense. He testified that, on the night in question, he attacked Givens and Bailey got in the way. He testified that the police tricked Bailey into allowing them to arrest him. He testified that he never hit Bailey after they went back to their apartment. Appellant stated that he did not hear Bailey tell the police that he hit her. Appellant also stated that he never told the police that the incident was an accident.
Based on the evidence presented, the jury did not lose its way in resolving the evidence. It was for the jury to determine the weight of the evidence and the credibility of the witnesses. The jurors were in a position to observe the witnesses' demeanor while testifying. Appellee presented ample, credible evidence to support the jury's finding of guilt.
Accordingly, appellant's second assignment of error is without merit.
Appellant's final assignment of error states:
 "THE DEFENDANT, ERNEST CARTER, WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE OHIO AND UNITED STATES CONSTITUTIONS."
Appellant alleges that his trial counsel was ineffective in the following ways: (1) counsel failed to file a motion in limine to exclude his prior convictions; (2) counsel failed to adequately question the prospective jurors during voir dire; and (3) counsel failed to present proper opening and closing arguments.
Appellant bears the burden of proof on the issue of counsel's effectiveness. State v. Calhoun (1999), 86 Ohio St.3d 279, 289. In Ohio, a licensed attorney is presumed competent. Id.
In order to prove ineffective assistance of counsel, appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. Strickland v. Washington (1984), 466 U.S. 668, 687; Statev. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. Id. To show that he has been prejudiced by counsel's deficient performance, appellant must prove that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Bradley, supra, at paragraph three of the syllabus.
First, appellant argues that his counsel should have filed a motion inlimine to exclude his prior convictions. He contends that this issue should have been fully researched and briefed for the trial court. Appellant claims that had the evidence of his prior convictions been excluded, there is a reasonable probability that he would not have been convicted.
Appellee brought up the issue of appellant's prior convictions out of the hearing of the jury prior to either side calling their witnesses. The court stated that it would review the Evid.R. 404(B) commentary. Appellant's appellate counsel submitted a motion to this court to correct the transcript, which stated that numerous sidebar conferences were not properly recorded at appellant's trial. The affidavit of appellant's trial counsel was attached to the motion. Appellant's trial counsel stated in his affidavit that he objected to appellee introducing evidence of appellant's prior convictions stating that it was not relevant, and in the alternative, that under Evid.R. 403 the evidence was inadmissible because the danger of unfair prejudice greatly outweighed any probative value. In the transcript, the court notes counsel's objection after a sidebar conference.
Whether or not to admit evidence is within the broad discretion of the trial court. Mays, supra, at 617. The court properly decided to allow appellant's prior convictions into evidence because they fit under one of the exceptions in Evid.R. 404(B). As was discussed previously, appellant's entire defense centered on the notion that when he struck Bailey it was an accident. The only way for appellee to prove that appellant's conduct was intentional was to prove lack of accident. Accordingly, the trial court would have admitted the evidence of appellant's prior convictions even if appellant's counsel had filed a motion in limine to exclude them. Therefore, appellant has failed to show that he was prejudiced by his counsel's failure to file said motion.
Next, appellant asserts that his counsel was ineffective during voirdire. He claims that his counsel failed to ask questions of most of the jurors and that the questions he did ask were superficial. Appellant argues that counsel should have asked questions regarding domestic violence, the presumption of innocence, and the burden of proof. Appellant further argues that counsel erred in only using two of his three peremptory challenges, leaving several potentially biased jurors on the panel. Appellant claims that these alleged errors during voir dire
prejudiced his right to a fair trial.
"The conduct of voir dire by defense counsel does not have to take a particular form, nor do specific questions have to be asked." State v.Evans (1992), 63 Ohio St.3d 231, 247.
Appellant's counsel asked several questions on voir dire. He also used two of his peremptory challenges. Counsel used his first peremptory challenge to excuse a woman who had a close friend who was a victim of domestic violence. He used another peremptory challenge to excuse a man whose sister was involved in a dispute with her boyfriend resulting in charges being filed. Also, appellant's counsel along with appellee moved the court to excuse a woman who stated that she felt a situation in her family might affect her in this case.
Given the presumption that appellant's counsel was competent, we should presume that the decisions appellant's counsel made as to which jurors to excuse and which jurors to keep were made with careful deliberation. Furthermore, appellant has not demonstrated that he was prejudiced by the jury. "A failure to prevail at trial does not grant an appellant license to appeal the professional judgment and tactics of his trial attorney."State v. Hart (1988), 57 Ohio App.3d 4, 10.
Finally, appellant claims that his counsel gave deficient opening and closing statements. As to his opening statement, appellant alleges that counsel did not address the facts of the case, what he thought the evidence would show, or how he planned to demonstrate that the state could not meet its burden of proof. As to his closing argument, appellant asserts that counsel failed in advising the jury why the state did not prove the elements of domestic violence. He also contends that counsel should have tried to mitigate the effect of his previous convictions. Appellant argues that counsel's poor opening and closing statements lost the case for him.
Trial tactics are generally not subject to question by a reviewing court. State v. Fryling (1992), 85 Ohio App.3d 557, 562. Trial counsel's choice of remarks in his opening statement are within the realm of trial tactics. Bradley, supra, at 144. Also, appellate courts "will not resort to the micro-management of closing arguments by trial lawyers." Statev. Hull (Dec. 3, 1999), Lucas App. No. L-98-1307, unreported, 1999 WL 1102136. Moreover, appellant has not provided any evidence that had his counsel made different opening and closing statements, the outcome of his trial would have been different.
Finally, appellant contends that even if his counsel's alleged errors do not individually constitute ineffective assistance of counsel, all of them taken as a whole denied him a fair trial.
Appellant has failed to prove either prong of the Bradley test. He has not demonstrated that his counsel's performance fell below an objective standard of reasonableness, nor has he established that he was prejudiced by his counsel's alleged errors. Without proving these two elements, it cannot be said that appellant was denied a fair trial.
Accordingly, appellant's final assignment of error is without merit.
For the reasons stated, the trial court's judgment is hereby affirmed.
 ___________________ DONOFRIO, J.
Vukovich, J., concurs
DeGenaro, J., concurs